# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1536V
Filed: March 15, 2022

* * * * * * * * * * * * * * * * * * * * * * * * *

DE'ANN ZASTROW,

       Petitioner,

v.

SECRETARY OF HEALTH
AND HUMAN SERVICES,

       Respondent.

* * * * * * * * * * * * * * * * * * * * * * * * *

Findings of Fact; Range of Motion; SIRVA (Not to be Published)

*David Carney*, Green & Schafle, LLC, Philadelphia, PA, for Petitioner
*Camille Collett*, U.S. Department of Justice, Washington, DC, for Respondent

## RULING ON RANGE OF MOTION[1]

**Oler**, Special Master:

On October 3, 2019, De'Ann Zastrow ("Ms. Zastrow" or "Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq*.[2] (the "Vaccine Act" or "Program"). The petition alleges that the Petitioner developed a left shoulder injury related to vaccine administration ("SIRVA") as a result of the flu vaccine she received on November 28, 2017. Pet. at 1, ECF No. 1.

---

[1] Because this unpublished Ruling contains a reasoned explanation for the action in this case, I intend to post it on the United States Court of Federal Claims' website, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** However, the parties may object to the Ruling's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public. *Id*.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

After carefully considering the evidence presented in this case, to include the medical records, Petitioner's affidavit, and the expert report authored by Petitioner's expert, Dr. Naveed Natanzi, I find that Petitioner did experience reduced range of motion after her receipt of the flu vaccine.

## I. Procedural History

Petitioner filed her petition on October 3, 2019. Pet., ECF No. 1. Ms. Zastrow filed supporting medical records on October 14, 2019 (Exs. 1, 3, 4, 5), an affidavit (Ex. 2), and a statement of completion on that same day. ECF No. 7.

Respondent filed a status report on January 20, 2021 indicating that "petitioner's claim may be appropriate for informal settlement." ECF No. 20. The parties engaged in settlement discussions for the next several months. On May 7, 2021, Petitioner filed a status report indicating that despite ongoing negotiations, the parties remained too far apart in their positions. ECF No. 24. Accordingly, Chief Special Master Corcoran set a deadline for Respondent to file his Rule 4 Report.

Respondent filed his Rule 4(c) Report on July 30, 2021. Resp't's Rep. ECF No. 28. Respondent argued that this case is not appropriate for compensation because the medical records do not reflect that Petitioner met the qualifications and aids to interpretation ("QAI") for SIRVA because "the left upper extremity pain that [Petitioner] experienced was not limited to the shoulder in which the flu vaccine was administered, and, at times, radiated down to her left hand or up into her neck." Resp't's Rep. at 5. Respondent further contended that there is no evidence that "petitioner had range of motion deficits in her left shoulder post vaccination." *Id.*

This case was transferred out of the SPU to my docket on August 11, 2021. ECF No. 29.

I held a status conference on August 17, 2021 where I asked counsel to explain why their settlement negotiations had not progressed. The parties indicated that "Respondent was not convinced that Petitioner's injury met the QAI criteria to qualify as a table SIRVA claim, given that Respondent believes that Petitioner did not suffer from reduced range of motion or pain that was limited to the left shoulder." Scheduling Order dated August 19, 2021; ECF No. 32. The parties agreed that Petitioner would file an expert report. *Id.*

Petitioner filed an expert report on September 22, 2021. Ex. 7.

On December 17, 2021, Respondent filed a status report indicating that "it would be helpful to have the Special Master's preliminary thoughts, particularly on specific factual elements in this case, to include whether petitioner's affidavit is sufficient to establish deficits in petitioner's shoulder range-of-motion that are not documented in petitioner's medical records." ECF No. 41.

I conducted a status conference on January 10, 2022. *See* Order dated January 12, 2022; ECF No. 42. During this status conference, I told the parties that I credited Petitioner's affidavit

along with medical records as support for the fact that Petitioner experienced reduced range of motion after her flu vaccine. *Id.* at 1. I gave Respondent a deadline of February 15, 2022 to file a status report indicating how he would like to proceed. *Id.* at 2.

Respondent filed a status report on February 15, 2022 asking that I "issue Findings of Fact regarding petitioner's range of motion deficits." ECF No. 43. I held a status conference with the parties on March 1, 2022, where we discussed several matters, to include whether the parties would prefer that I issue a ruling on entitlement or a fact ruling. ECF No. 44. Respondent filed a status report reiterating his request that I rule on Petitioner's range of motion deficits and indicated that "resolution of this issue would render the case ripe for resolution." ECF No. 45. Petitioner did not object to this course of action.

The matter is now ripe for a factual determination.

## II.     Petitioner's Medical Records that Discuss her Range of Motion

Petitioner received her flu vaccine on November 28, 2017. Ex. 1 at 79.

On January 24, 2018, Petitioner saw NP Kontia Grant for left shoulder pain following her flu shot on November 28, 2017. Ex. 1 at 83. The HPI notes that it was difficult for Petitioner to lift her left arm. *Id.* The musculoskeletal portion of the exam indicates Petitioner had "Normal range of motion, Normal strength, No tenderness, No swelling." *Id.* at 85.

On April 12, 2018, Petitioner visited Kelly Purcell, D.O. Ex. 1 at 95. During this visit, Petitioner complained of left arm pain that began after her flu shot in November of 2018. *Id.* She described the pain as sharp and stabbing and stated that it was present all the time. *Id.* The musculoskeletal portion of the exam notes "Normal range of motion, Normal strength, left arm tender diffusely with palpation." *Id.* at 97.

Petitioner attended an initial physical therapy evaluation on June 12, 2018. Ex. 4 at 2. The record notes that "[p]ain is constant, pain worsens with lifting, pulling, dressing, work demands as a seamstress." *Id.* On exam, petitioner's range of active motion was measured at 180˚. *Id.* However, this same record notes that "Patient presents with losses in - ROM [range of motion] – Strength". *Id.* at 4. The same record indicates that her losses resulted in functional limitations, which include "pain with reaching across body and putting on clothing", "pain with lifting objects", and "increased pain with pulling activities." *Id.*

**FUNCTIONAL STATUS & GOALS:**
Patient presents with losses in - ROM - Strength
These losses result in the following functional limitations:

| Activity | | At Eval | Before Date of Onset | Description of Current Level of Function |
|---|---|---|---|---|
| Dressing | | minimal difficulty | without difficulty | pain wtih reaching across body and putting on clothing |
| Lifting > 5 lbs. | | moderate difficulty | without difficulty | pain with lifting objects/work related tasks as a seamstress |
| Pulling | | moderate difficulty | without difficulty | increased pain wtih pulling activities |

*Id.*

### III.     Portions of Petitioner's Affidavit that Pertain to her Range of Motion

In her affidavit filed on October 14, 2019, Petitioner averred that she continues to experience "severe pain, discomfort and decreased range of motion in my left shoulder." Ex. 2 at 2. Petitioner noted that her decreased range of motion began within one week of vaccination, and that it continued to worsen in January of 2018. *Id.* at 3. She also stated that she has difficulty reaching for objects, raising her arm, carrying objects, and getting changed. *Id.* at 2. Petitioner averred that her shoulder injury has affected her life. She stated: "I cannot pick up objects, reach for objects, get a good night of sleep, play with my grandchildren, or perform my job functions without being in severe pain." *Id.* at 4.

### IV.     Expert Opinion that Pertains to Range of Motion

Petitioner filed an expert report from Dr. Naveed Natanzi, a board-certified specialist in physical medicine and rehabilitation and pain management. Ex. 7. With respect to range of motion, Dr. Natanzi opined "I do believe there was a shoulder injury which was causing obvious pain and likely some limitation or at least pain with range of motion, given descriptions within the affidavit of pain with lifting, getting dressed, etc." Ex. 7 at 9. Finally, Dr. Natanzi concluded that Petitioner's presentation meets all the QAI criteria for SIRVA. *Id.* at 10-11.

### V.     Legal Standards Regarding Fact Finding

Petitioner bears the burden of establishing her claim by a preponderance of the evidence. 42 U.S.C. § 300aa-13(1)(a). A petitioner must offer evidence that leads the "trier of fact to believe that the existence of a fact is more probable than its nonexistence before [he or she] may find in favor of the party who has the burden to persuade the judge of the fact's existence." *Moberly v. Sec'y of Health & Hum. Servs*., 592 F.3d 1315, 1322 n.2 (Fed. Cir. 2010) (citations omitted).

In order to make a determination concerning factual issues, such as the timing of onset of petitioner's alleged injury, the special master should first look to the medical records. "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993); *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2006 WL 3734216, at *8 (Fed. Cl. Spec. Mstr. Nov. 29, 2006). Medical records created contemporaneously with the events they describe are presumed to be accurate and complete. *Doe/70 v. Sec'y of Health & Hum. Servs.,* 95 Fed. Cl. 598, 608 (2010).

Contemporaneous medical records generally merit greater evidentiary weight than oral testimony; this is particularly true where such testimony conflicts with the record evidence. *Cucuras*, 993 F.2d at 1528; *see also Murphy v. Sec'y of Health & Hum. Servs*., 23 Cl. Ct. 726, 733 (1991), *aff'd*, 968 F.2d 1226 (Fed. Cir. 1992)(citing *United States v. United States Gypsum Co*., 333 U.S. 364, 396 (1947) ("It has generally been held that oral testimony which is in conflict with contemporaneous documents is entitled to little evidentiary weight")).

However, there are situations in which compelling oral testimony may be more persuasive than written records--for instance in cases where records are found to be incomplete or inaccurate. *Campbell*, 69 Fed. Cl. at 779 ("like any norm based upon common sense and experience, this rule should not be treated as an absolute and must yield where the factual predicates for its application are weak or lacking"); *Lowrie*, 2005 WL 6117475, at *19 ("Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent") (quoting *Murphy*, 23 Cl. Ct. at 733).

When witness testimony is used to overcome the presumption of accuracy afforded to contemporaneous medical records, such testimony must be "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Hum. Servs.*, No. 11-685V, 2013 WL 1880825 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). In determining the accuracy and completeness of medical records, the Court of Federal Claims has listed four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1334 (Fed. Cir. 2014). A special master making a determination whether to afford greater weight to contemporaneous medical records or other evidence, such as testimony at a hearing must have evidence suggesting the decision was a rational determination. *Burns by Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993).

In order for Petitioner to succeed on a Table SIRVA claim, he must show that his claim meets the Table criteria for a SIRVA. The Qualifications and Aids to Interpretation ("QAI") further specify:

> A vaccine recipient shall be considered to have suffered a SIRVA if such recipient manifests all of the following:
>
> i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
> ii) Pain occurs within the specified time-frame;
> iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
> iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### VI.  Findings of Fact

Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a preponderance of the evidence. § 300aa-12(a)(1)(A). Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence." *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

The question to be resolved is whether Petitioner experienced loss of range of motion after her November 28, 2017 flu vaccine. Range of motion is defined as "the range, measured in degrees of a circle, through which a joint can be extended and flexed."[3] After careful examination of the record as a whole, I find there is preponderant evidence that Petitioner did experience a loss of range of motion in her left shoulder.

In arriving at this determination, I place significant weight on Petitioner's affidavit, wherein she described a "decreased range of motion that affected [her] daily life and [her] work." Ex. 2 at 3. Petitioner averred that she "went back to [her] family doctor in January 2018 because [her] left shoulder was still in severe pain and [her] range of motion was continuing to get worse." *Id.* Petitioner described that her "shoulder pain and decreased range of motion w[ere] also affecting [her] ability to earn a living by doing [her] upholstery work. [She] ha[s] to lift furniture and be hands-on, and [she] feel[s] like [she] can only do the work with one arm." *Id.* at 4.

Petitioner goes beyond simply stating that she experienced reduced range of motion -- she provides specific examples of how this reduction manifested itself in her life. She describes difficulty reaching for objects. *Id.* at 2. She further states, "I could barely raise my left arm just a few weeks after getting the flu shot." *Id.* at 3. These descriptions, in particular the extreme difficulty raising her arm, describe a reduced range of motion.

Although reduced range of motion is not well documented in Petitioner's medical records, one record does note that "Patient presents with losses in - ROM - Strength". Ex. 4 at 4. This same record indicates that her losses have resulted in functional limitations, which include "pain with reaching across body and putting on clothing", "pain with lifting objects", and "increased pain with pulling activities." *Id.* Additionally, the medical record from January 24, 2018, notes that it was difficult for Petitioner to lift her left arm. Ex. 1 at 83. Although Petitioner's range of motion was recorded as normal during this visit, the fact that lifting her arm was difficult implies that this movement caused pain, and further that Petitioner was not able to move her shoulder joint normally without experiencing pain.

Petitioner has also provided evidence of her reduced range of motion through the opinion of Dr. Natanzi. Dr. Natanzi opined that Petitioner likely had some limitation with range of motion. Ex. 7 at 9. Ultimately, he concluded that Petitioner's presentation meets all the QAI criteria for SIRVA. *Id.* at 10-11. This opinion inherently includes the fact that Petitioner experienced reduced range of motion. I find that Dr. Natanzi's expert report helps Petitioner to meet her burden in this case.

---

[3] *Range of motion*, Dorland's Med. Dictionary Online, https://www.dorlandsonline.com/dorland/definition?id=102065 (last accessed March 14, 2022).

### VII. Conclusion

In short, I find that Petitioner's affidavit, her medical records, and the expert opinion of Dr. Natanzi work in concert to provide preponderant evidence that Petitioner experienced loss of range of motion in her left shoulder.

The following is therefore ORDERED:

By **April 14, 2022**, Respondent shall file an Amended Rule 4 Report based on the facts articulated in this ruling.

**IT IS SO ORDERED.**

**s/ Katherine E. Oler**
Katherine E. Oler
Special Master
